IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff/Respondent,

  vs.                                    Nos.   CR 13-959 MV
                                                    CIV 16-696 MV/KK

ELIAS ATENCIO,

    Defendant/Movant.

## PROPOSED FINDINGS OF FACT AND RECOMMENDED DISPOSITION

THIS MATTER comes before the Court on Defendant Elias Atencio's Motion to Correct Sentence Pursuant to 28 U.S.C. § 2255. (Doc. 1).[1] Mr. Atencio seeks to have his sentence set aside pursuant to the Supreme Court's decision in *Johnson v. United States*, 135 S.Ct. 2551 (2015), which invalidated the residual clause of the Armed Career Criminal Act ("ACCA") as unconstitutionally vague under the Fifth Amendment Due Process Clause. The Court has satisfied itself that Mr. Atencio's Motion is limited to only matters of law, and its disposition requires no further factual development or evidentiary hearing. *See* 28 U.S.C. § 2255(b) (providing that a court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."). Having thoroughly reviewed the submissions of the parties, the relevant law, the record before the Court, including the Presentence Investigation Report, the plea hearing transcript (CR Doc.

---

[1] Citations to "Doc." are to the document number in the civil case. Citations to "CR Doc." are to the document number in the criminal case number 13-CR-959 MV, unless otherwise noted.

57), and the sentencing hearing transcript (CR Doc. 58), the Court recommends[2] that Mr. Atencio's motion be denied.

## I. Background Facts and Procedural Posture

On March 27, 2013, a federal grand jury returned a three count Indictment against Mr. Atencio, charging him with being a Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1) and 922(a)(2) (Count 1), Interference with Interstate Commerce by Robbery and Violence, in violation of 18 U.S.C. § 1951 (Count 2), and Using, Carrying, Possessing, and Brandishing a Firearm During and in Relation to and in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c) (Count 3). Mr. Atencio pled guilty on August 6, 2014, to being a Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. § 922(g)(1) and 922(a)(2) (Count 1) and Using, Carrying, Possessing, and Brandishing a Firearm During and in Relation to and in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c) (Count 3) pursuant to a Plea Agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). (CR Docs. 36, 38). The Government agreed to, and moved to dismiss the Hobbs Act robbery charge in Count 2 pursuant to the plea agreement. (CR. Docs. 38, 50.) In his plea agreement, Mr. Atencio and the Government stipulated that "a sentence of twenty-two (22) years, or 264 months, is the appropriate disposition for this case[.]" (CR Doc. 38 at 6, ¶ 9(a)). Mr. Atencio's plea agreement contained an appeal rights waiver, that gave up his right to appeal "any sentence that is lawfully imposed within the scope of this 11(c)(1)(C) plea agreement." (CR Doc. 38 at 9, ¶17(a)). Mr. Atencio also waived his right to collaterally attack his conviction pursuant to 28 U.S.C. § 2255, "except on the issue of ineffective assistance of counsel." (*Id.*).

---

[2] The Honorable Martha Vazquez referred this case to the undersigned to recommend an ultimate disposition on June 24, 2016.

Defendant's original sentencing hearing was scheduled for March 17, 2015, but it was delayed because the Court ordered a comprehensive psychological evaluation. (CR Doc. 40, 41). Thus, Mr. Atencio's sentencing hearing occurred a little more than eighteen months after he entered his guilty plea.  During this period of delay, the United States Supreme Court issued its decision in *United States v. Johnson*, invalidating the ACCA's residual clause as unconstitutionally vague.  135 S.Ct. 2551 (2015).  Importantly, Mr. Atencio did not seek to withdraw his guilty plea, ask the Court to reject his 11(c)(1)(C) plea agreement, or otherwise object to his sentence under *Johnson*.  (CR Doc. 58 at 9:16 to 10:1; 18:1-21).  Instead, on February 8, 2016, at his sentencing hearing, Mr. Atencio explicitly requested that the Court accept his plea agreement, because his sentence was "a long sentence, obviously, .[but] . . if [Mr. Atencio] went to trial and [was] convicted of all charges . . . he'd pretty much be receiving a life sentence."  (CR Doc. 58 at 17:7-15).  In accordance with Mr. Atencio's request, United States District Judge Michael Reagan accepted the 11(c)(1)(C) plea agreement effectively binding the Court to the agreed upon 264-month sentence.  (*Id.* at 18, 20, 21:18 to 23:12, 26:3-22); *see* Fed. R. Crim. P. 11(c)(1)(C) (noting that a plea agreement for a specific sentence or sentencing range under that subsection "binds the court once the court accepts the plea agreement").  Thus, the Court sentenced Mr. Atencio to the stipulated sentence of 264 months' imprisonment: 180 months as to Count 1 (Felon in Possession of a Firearm) and 84 months as to Count 3 (Brandishing a Firearm During and In Relation to a Crime of Violence). (Doc. 58 at 26:23 to 27:3; 29:3-4; Doc. 49 at 3). Judge Reagan also noted that, at age 16, Mr. Atencio was "adjudicated for an offense involving burglary and possession of a weapon on school premises," as well as a robbery at 18 and five other felonies between ages 24 and 30, three of which classified as "crime-of-violence convictions." (*Id.* at 27:9-15). These "violent felonies qualified

3

him as an armed career criminal" and a three-strike offender, which would have subjected him to "a life term of imprisonment under 18 U.S.C. Section 3559(c)(1)" at trial. (*Id.* at 27:16-22). Mr. Atencio also secured an additional benefit at sentencing when the United States concurred, and the federal sentencing judge agreed, to his request to run his federal sentence concurrent to a State sentence imposed on Mr. Atencio in February 2012. (*Id.* at 23:13 to 24:9; 29:3-15).

The Court filed its Judgment in this case on February 29, 2016. (CR Doc. 49). Defendant did not file a direct appeal challenging his sentence or conviction. On June 24, 2016, Mr. Atencio filed the instant motion arguing that his "predicate offenses for the ACCA in Count 1 of the Indictment are no longer valid after the Supreme Court's holding in *Johnson II* [135 S. Ct. 2551 (2015)]," and his 18 U.S.C. § 924(c) conviction should be vacated because Hobbs Act Robbery is likewise not a crime of violence after *Johnson*. (Doc. 1 at 2-3). Specifically, Mr. Atencio argues that his predicate offenses of robbery, armed robbery, and aggravated assault with a deadly weapon do not qualify as "crimes of violence" under the stricken residual clause of the ACCA after *Johnson*. (*Id.* at 5-20). The Government filed its response brief on September 23, 2016, asserting: (1) Mr. Atencio is procedurally barred from raising a collateral attack on his sentence; (2) *Johnson* does not affect his §924(c) conviction, because Hobbs Act Robbery is a "crime of violence;" and (3) his predicate offenses of Armed Robbery with a Deadly Weapon, Aggravated Assault with a Deadly Weapon, and his juvenile adjudication of Aggravated Burglary[3] each qualifies as a "crime of violence," and are unaffected by *Johnson*. (Doc. 6). The Government also seeks to enforce Mr. Atencio's waiver of his right to collaterally attack his conviction in his Rule 11(c)(1)(C) plea agreement. (*Id.* at 19-24). Mr. Atencio filed a

---

[3] The parties appear to disagree as to the nature of Mr. Atencio's predicate offenses. Upon review of the record, the undersigned notes that the Presentence Report ("PSR") does not specify which crimes were used to impose the ACCA enhancement, but in paragraph 8(k) of his plea agreement Mr. Atencio acknowledged convictions for the following prior offenses also set forth in the PSR: (1) Robbery; (2) Aggravated Assault with a Deadly Weapon; and (3) Armed Robbery. (PSR, ¶¶ 41, 42, and 46).

Reply brief on January 20, 2017, arguing that he was not procedurally barred because he can establish "cause and prejudice," or "actual innocence," and that the waiver should not be enforced because enforcement would result in a miscarriage of justice. (Doc. 18). The parties also filed supplemental briefing concerning recent case law addressing the issue of the applicability of *Johnson* to a predicate offense of third-degree robbery. (Doc. 20, Doc. 21).

Because the Court finds that Mr. Atencio's *Johnson* claims attacking his sentence are procedurally barred and that he waived his right to collaterally attack his 924(c) conviction, the Court recommends that Mr. Atencio's motion be dismissed with prejudice.

## II. Discussion

### A. Mr. Atencio's Challenge to His Sentence Is Procedurally Barred.

"Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Bousley v. United States*, 523 U.S. 614, 621 (1998) (quotations omitted). As such, a Section 2255 motion "is not available to test the legality of a matter which should have been raised on direct appeal." *United States v. Cox*, 83 F.3d 336, 341 (10th Cir. 1996). The completed operation of trial and appellate procedures, resulting in a final judgment, commands respect. *United States v. Frady*, 456 U.S. 152, 164–65 (1982). Therefore, once a defendant's appellate rights have been waived or exhausted, the court is "entitled to presume he stands fairly and finally convicted, especially when…he has had a fair opportunity to present his federal claims to a federal forum." *Id.* Although Mr. Atencio entered an appeal waiver, giving up his right to appeal "any sentence that is *lawfully* imposed within the scope of this 11(c)(1)(C) plea agreement," (CR Doc. 38 at 9, ¶17(a) (emphasis added)), his appellate waiver did not cover the sentencing error claim he presses here – *i.e.,* that his sentence was *unlawfully* imposed. Mr. Atencio has procedurally defaulted this claim by failing to raise it on direct appeal.

5

A defendant who has procedurally defaulted on an appellate claim by failing to raise it on direct review may only raise that claim in a habeas proceeding by either showing cause and actual prejudice, or that he is "actually innocent." *Bousley*, 523 U.S. at 622; *Massaro v. United States*, 538 U.S. 500, 504 (2003). Cause has been found to exist, for example, when a subject constitutional "claim is so novel that its legal basis is not reasonably available to counsel" in earlier proceedings. *Bousley*, 523 U.S. at 622 (quoting *Reed v. Ross*, 468 U.S. 1, 16 (1984)).

Mr. Atencio argues that at the time he signed his plea agreement identifying three prior ACCA qualifying convictions, the Supreme Court had twice ruled that the residual clause of the ACCA was not unconstitutionally vague and that this "is more than sufficient to excuse a failure to challenge those prior convictions." (Doc. 18 at 2). However, Mr. Atencio's argument completely ignores the fact that *Johnson* had been decided eight months before his sentencing hearing. At sentencing, Judge Reagan informed Mr. Atencio that his time for filing an appeal was within 14 days of sentencing. (Doc. 58 at 33:6-25). Nonetheless, he failed to file an appeal within that timeframe. In other words, Mr. Atencio, being well aware of his potential *Johnson* argument before he urged the Court to accept his plea agreement and was sentenced under its terms, cannot demonstrate that his *Johnson* claim was so novel that its legal basis was not reasonably available to counsel. Mr. Atencio has not demonstrated that he had cause for purposes of excusing his procedural default.

Mr. Atencio has also not demonstrated that he was prejudiced. As his attorney remarked in urging the Court to accept the plea agreement, Mr. Atencio benefited greatly from the stipulated sentencing terms. A sentence of twenty-two years' imprisonment (fifteen years for Count 1 and 7 years for Count 3), while admittedly long, is significantly shorter than the lifetime term of imprisonment he was facing had he been classified as a three-strike federal offender or

6

the 346-411 months guideline range he faced even if not enhanced under the federal three-strikes law. (CR Doc. 58 at 17:7-15, PSR ¶¶ 98-100.) Mr. Atencio faced a sentence of up to lifetime incarceration on the 924(c) conviction alone and instead was sentenced to a stipulated term of seven years imprisonment: the lowest possible sentence he could have received for brandishing a firearm during his Hobbs Act Robbery. *See* 18 U.S.C. § 924(c)(1)(A)(ii). *See Alleyne v. United States*, 133 S. Ct. 2151, 2160 (2013); *United States v. Avery,* 295 F.3d 1158, 1170 (10th Cir.2002).[4] Under these circumstances, Mr. Atencio cannot demonstrate that he was prejudiced by the Court's sentence entered in accordance with its acceptance of his Rule 11(c)(1)(C) plea agreement.

Finally, Mr. Atencio's claim could still be reviewed in this collateral proceeding if he were able to establish that the constitutional error he asserts "has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). To establish actual innocence, a petitioner must demonstrate that, in light of all the evidence, "it is more likely than not that no reasonable juror would have convicted him." *Schlup v. Delo*, 513 U.S. 298, 339 (1995). Moreover, "'actual innocence' means factual innocence, not mere legal insufficiency," and "[i]n cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges." *Bousley*, 523 U.S. at 623-24. Mr. Atencio merely argues that if the Court accepts his argument that his Hobbs Act Robbery was not a requisite "crime of violence" as defined in 18

---

[4] In fact, every other Circuit addressing the issue has come to the conclusion that in setting out a statutory minimum but not a statutory maximum, Congress implicitly intended to make life imprisonment the statutory maximum for 924(c)(1)(A)(i)-(iii) convictions. *United States v. Morgan*, 572 F. App'x 292, 300 (6th Cir. 2014) (unpublished); *United States v. Ortiz-Garcia*, 665 F.3d 279, 285 (1st Cir. 2011); *United States v. Shabazz,* 564 F.3d 280, 289 (3d Cir. 2009); *United States v. Johnson,* 507 F.3d 793, 798 (2d Cir.2007); *United States v. Lucas,* 670 F.3d 784, 795–96 (7th Cir.2012); *United States v. Gamboa,* 439 F.3d 796, 811 (8th Cir.2006); *United States v. Dare,* 425 F.3d 634, 642 (9th Cir.2005); *United States v. Cristobal,* 293 F.3d 134, 147 (4th Cir.2002); *United States v. Sandoval,* 241 F.3d 549, 551 (7th Cir.2001); *United States v. Sias,* 227 F.3d 244, 246 (5th Cir.2000); *United States v. Pounds,* 230 F.3d 1317, 1319 (11th Cir.2000).

U.S.C. § 924(c)(3), he would be legally innocent of his Section 924(c) conviction.[5] This is insufficient. Importantly, Mr. Atencio does not raise a single claim that he is actually innocent of any of the underlying conduct for which he was convicted, and the undersigned finds no evidence indicating that his admissions of guilt in the factual basis of his plea agreement or on the record at his plea hearing were anything but true.

Mr. Atencio has not demonstrated cause and actual prejudice, or that he is "actually innocent." He is therefore procedurally barred from raising his claim that his sentence is unlawful pursuant to *Johnson* in this habeas proceeding.

> **B.    Mr. Atencio Waived His Right to Collaterally Challenge His Conviction for Using, Carrying, Possessing, and Brandishing a Firearm During and in Relation to and in Furtherance of a Crime of Violence, in Violation of 18 U.S.C. § 924(c)**.

A criminal defendant's waiver of his right to collaterally attack his conviction or sentence within a plea agreement is generally enforceable when "the waiver is expressly stated in the plea agreement and where both the plea and the waiver were knowingly and voluntarily made." *U.S. v. Cockerham*, 237 F.3d 1179, 1183 (10th Cir. 2001). Contract principles govern plea agreements. *United States v. Hahn*, 359 F.3d 1315 (10th Cir. 2004) (en banc) (per curiam) (reviewing waiver of appellate rights). Thus, the enforceability of a criminal defendant's waiver of appeal and post-conviction challenge rights under a plea agreement "is a question of law."

---

[5] While Defendant's procedural default and collateral attack waiver obviates the Court's need to address his argument that Mr. Atencio's Hobbs Act Robbery of the Walgreens store during which he brandished a firearm is not a crime of violence for purposes of 18 U.S.C. § 924(c), the plain language of 18 U.S.C. § 1951(a) "has as an element the use, attempted use, or threatened use of physical force against the person or property of another," and is not susceptible to a *Johnson* attack. *See United States v. Moreno*, 665 Fed.Appx. 678, 681, 2016 WL 6648670 (10th Cir. Nov. 10, 2016)(unpublished) ("The district court correctly held that robbery, as defined in § 1951, qualifies as a "crime of violence" under § 924(c)(3)(A)... Accordingly, Count 2 [for Hobbs Act Robbery] was not predicated on § 924(c)(3)(B) (the invalidated residual clause under *Johnson*).") In other words, Mr. Atencio's armed robbery of the Walgreens store, which he admitted "was a crime of violence . . . specifically interference with interstate commerce by force" (Doc. 38, at 5 ¶ 8(j)), qualifies as a crime of violence under 924(c)(3)(A)'s force clause, and not 924(c)(3)(B)'s residual clause.

*United States v. Polly*, 630 F.3d 991, 1001 (10th Cir. 2011) (quoting *United States v. Ibarra–Coronel,* 517 F.3d 1218, 1221 (10th Cir. 2008)).

When a defendant waives the right to collaterally attack his conviction but later files a motion pursuant to 28 U.S.C. § 2255, the Court must determine (1) whether the collateral attack falls within the scope of the waiver in the plea agreement; (2) whether the defendant knowingly and voluntarily waived his right to collateral review; and (3) whether enforcing the waiver would result in a miscarriage of justice. *United States v. Viera*, 674 F.3d 1214, 1217 (10th Cir. 2012) (citing *Hahn*, 359 F.3d at 1325); *see also Cockerham*, 237 F.3d at 1183 ("the constraints which apply to a waiver of the right to direct appeal also apply to a waiver of collateral attack rights"). The court strictly construes waivers and reads any ambiguities in favor of the defendant's rights. *Hahn*, *id.*

### 1. Within the Scope of the Waiver

There can be no dispute that Mr. Atencio's challenge to his 924(c) conviction falls squarely within the plain terms of his waiver, and in fact Defendant does not raise such a dispute. Mr. Atencio's plea agreement provides, "the Defendant agrees to waive any collateral attack to the Defendant's conviction pursuant to 28 U.S.C. § 2255, except on the issue of ineffective assistance of counsel." (CR Doc. 38, ¶ 17).[6] Mr. Atencio's claim is a collateral attack on the 924(c) conviction brought pursuant to 28 U.S.C. § 2255. Defendant does not raise any allegations that his counsel provided ineffective assistance. His claim therefore falls within the scope of the waiver.

---

[6] To the extent that the scope of the waiver is at issue, the undersigned notes that this district has previously found that a collateral attack challenging a defendant's sentence on the same grounds fell "squarely within the plain terms" of an identically-worded waiver. *See United States v. Gresham*, 16-cv-632 RB/WPL, EMF No. 14, *6 (Proposed Findings and Recommended Disposition filed Dec. 7, 2016) (Report and Disposition adopted January 18, 2017).

### 2.   **<u>Knowing and Voluntary</u>**

Under the second prong, the court examines "whether the language of the plea agreement states that the defendant entered the agreement knowingly and voluntarily, and…an adequate Federal Rule of Criminal Procedure colloquy." *Hahn*, 359 F.3d at 1325.  Defendant does not dispute that he knowingly and voluntarily waived his right to collateral review of his conviction, and indeed such an argument would fail.  The plea agreement clearly stated the nature and scope of the waiver.  (CR Doc. 38, ¶ 17).  Further, Mr. Atencio's plea agreement expressly stated that he entered the plea agreement "freely and voluntarily." (Doc. 38, ¶ 18).  He also represented:

> I understand the terms of this Agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant Sentencing Guidelines provisions, and of the consequences of entering into this Agreement.  No promises or inducements have been given to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this Agreement.  Finally, I am satisfied with the representation of my attorney in this matter.

*(Id.* at 12.)  Mr. Atencio's attorney also represented that he had "carefully discussed every part of this agreement with [Mr. Atencio]," and that to his knowledge, Mr. Atencio's "decision to enter into this Agreement is an informed and voluntary one." (*Id.* at 11.)

At the plea colloquy in front of Magistrate Judge Karen Molzen, Mr. Atencio testified that he read through the plea agreement with his attorney before he signed it, (Doc. 57 at 13), that he was pleading guilty voluntarily, (*Id.* at 24-25), and that he understood everything that was happening in the plea hearing. (*Id.* at 7, 30).  Mr. Atencio confirmed that he was not under the influence of drugs, medicines, or alcohol.  (*Id.* at 7).  Mr. Atencio also testified that he understood paragraph 17 which contained his waiver of appellate and collateral attack rights. (*Id.* at 16).  Judge Molzen accepted Mr. Atencio's guilty pleas, finding that he was "fully competent and capable of entering an informed plea," "aware of the nature of these charges and the

consequence of the plea; and these pleas of guilty to Counts One and Three are knowing and voluntary, and they are supported by an independent basis in fact that contains all of the elements of both offenses." (*Id.* at 30.) Based on all of this evidence, the undersigned finds that Mr. Atencio knowingly and voluntarily waived his right to collaterally attack his convictions.

### 3. **Miscarriage of Justice**

"[A] miscarriage of justice through enforcement of a waiver occurs only in one of four situations: '[1] where the district court relied on an impermissible factor such as race, [2] where ineffective assistance of counsel in connection with the negotiation of the waiver renders the waiver invalid, [3] where the sentence exceeds the statutory maximum, or [4] where the waiver is otherwise unlawful.'" *Viera*, 674 F.3d at 1219 (quoting *Hahn*, 359 F.3d at 1327). To satisfy the fourth factor, "the error must seriously affect the fairness integrity or public reputation of judicial proceedings[.]" *Id.* (internal markings and citations omitted). Mr. Atencio bears the burden of establishing that one of these four situations exists. *Id.*

Mr. Atencio argues that his waiver should not be enforced, because his sentence exceeds the "statutory maximum" as his predicate convictions do not qualify as 'crimes of violence' under the ACCA, (Doc. 1 at 3-4), and "allowing an unconstitutional sentence to stand would be a miscarriage of justice," (Doc. 18 at 22). However, the Court is not recommending enforcement of the waiver as a bar to Mr. Atencio's *Johnson* challenge to the lawfulness of his sentence. Rather, the collateral attack waiver by its plain terms pertains to collateral attacks on his convictions, and the only conviction that Mr. Atencio challenges is his 924(c) conviction. The Court has already found Mr. Atencio's challenges to the lawfulness of his sentence to be procedurally barred as discussed above. In any event, Mr. Atencio's argument that his 22 year sentence is a "miscarriage of justice" that should preclude enforcement of his waiver

11

misinterprets that exception. The inquiry under the miscarriage of justice exception "is not whether the *sentence* is unlawful, but whether the *waiver itself* is unlawful because of some procedural error or because no waiver is possible." *United States v. Sandoval*, 477 F.3d 1204, 1208 (10th Cir. 2007) (emphasis added); *United States v. Polly*, 630 F.3d 991, 1002 (10th Cir. 2011); *United States v. Shockey*, 538 F.3d 1355, 1357 (10th Cir. 2008) ("As inscrutable as [defendant's] sentence is, enforcement of his plea agreement's appellate waiver would not render the waiver itself unlawful."); *United States v. Smith*, 500 F.3d 1206, 1212–13 (10th Cir. 2007). Thus, a *Johnson*-based challenge to the lawfulness of a sentence "does not provide a basis for holding enforcement of the waiver to be a miscarriage of justice." *United States v. Frazier-LeFear*, 665 Fed.Appx. 727, 732 (10th Cir. 2016) (unpublished) ("The fact that [the defendant's] relinquishment of this right results in the lost opportunity to raise a constitutional challenge under *Johnson* reflect the natural operation, not the invalidity, of the waiver."); *see also*, *Gutierrez v. United States*, No. CR 12-155 WJ, 2017 WL 3037470, at *4 (D.N.M. June 27, 2017), *report and recommendation adopted sub nom. Anthony Gutierrez, Petitioner, v. United States of America, Respondent.* (D.N.M. July 17, 2017) (Johnson, W.) (enforcing a defendant's waiver to collaterally attack his sentence in a plea agreement based on a *Johnson* challenge). "The whole point of a waiver . . . is the relinquishment of claims *regardless* of their merit." *United States v. Nguyen*, 235 F.3d 1179, 1184 (9th Cir. 2000) (emphasis in original).

To the extent that Mr. Atencio argues that the application of *United States v. Johnson* to his 924(c) conviction renders the waiver of his right to collaterally attack that conviction unenforceable as a "miscarriage of justice," such argument is also unavailing. (Doc. 18 at 22-23). "Supreme Court precedent is quite explicit that as part of a plea agreement, criminal defendants may waive both rights in existence and those that result from unanticipated later

judicial determinations." *Porter*, 405 F.3d at 1144 (citing *Brady v. United States*, 397 U.S. 742, 757, 90 S.Ct. 1463, 25 L.Ed. 2d 747 (1970)); *see also*, *Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016) (per curiam) (holding that defendant's ability to challenge his sentence under *United States v. Johnson* was waived under his plea agreement, because "the possibility of a favorable change in the law after a plea is simply one of the risks that accompanies pleas and plea agreements.").

Tenth Circuit precedent is clear that Mr. Atencio's collateral attack waiver is enforceable unless it meets one of the four limited exceptions outlined herein. Mr. Atencio has failed to demonstrate that his waiver was unlawful or improper in any way, and because he does not meet his burden of establishing that any of these exceptions apply, the Court does not reach the merits of Defendant's argument challenging his 924(c) conviction under *Johnson*. *See United States v. Shockey*, 538 F.3d 1355, 1356 (10th Cir. 2008) ("We cannot reach the merits of Shockey's argument because our precedent compels the conclusion that the appellate waiver contained in Shockey's plea agreement is enforceable. As such, we dismiss his appeal.").

## III.     Recommendation

For the foregoing reasons, the Court proposes to find that Mr. Atencio's Motion and the record conclusively establish that he is not entitled to the relief he seeks. Consequently, the Court recommends that Defendant's Motion to Correct Sentence Pursuant to 28 U.S.C. § 2255 be DENIED and this case be DISMISSED WITH PREJUDICE.

_____
Kirtan Khalsa
United States Magistrate Judge

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE of a copy of these Proposed Findings and Recommended Disposition, they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**